**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PACHECO ROSS ARCHITECTS, P.C.,
*f/k/a/ Mitchell Ross Associates Architects, P.C.* and
DENNIS A. ROSS, *Architect*,

                                    Plaintiffs,

           - v -                                           Civ. No. 1:08-CV-466
                                                                  (GTS/RFT)

MITCHELL ASSOCIATES ARCHITECTS and
ROBERT A. MITCHELL,

                                    Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

MASTROPIETRO-FRADE, LLC              JOHN P. MASTROPIETRO, ESQ.
*Attorney for Plaintiffs*
63 Franklin St.
Saratoga Springs, NY 12866

YOUNG, SOMMER LAW FIRM              J. MICHAEL NAUGHTON, ESQ.
*Attorney for Defendants*
5 Palisades Dr.
Albany, NY 12205

SONYA K. del PERAL, ESQ.
*Attorney for Defendants*
22 Park Row
Chatham, NY 12037

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DECISION-MEMORANDUM and ORDER

        Presently before the Court is Defendants Robert A. Mitchell's and Mitchell Associates

Architects' Motion to Disqualify the Plaintiffs' attorney, John P. Mastropietro, Esq., due to, *inter*

*alia*, alleged conflicts of interest.  Dkt. No. 43.  The Plaintiffs oppose the Motion.  Dkt. No. 47.  For

the reasons that follow, the Motion is **DENIED**.

## I. BACKGROUND[1]

In 1992, Plaintiff Dennis Ross and Defendant Robert Mitchell formed an architectural firm known as Mitchell Ross Associates, specializing in the design of public safety facilities such as fire stations and municipal buildings. In 1996, the two men formed Mitchell-Ross Associates Architects, P.C. ("the Firm"), each owning a fifty percent (50%) share in the company. In or about 2000, the Firm retained John Mastropietro, Esq., as its general counsel. In 2002, Ross and Mitchell each transferred a one percent (1%) share in the Firm to David Pacheco; from 2002 through 2005, Pacheco owned a two percent (2%) share in the Firm while Ross and Mitchell each held forty-nine percent (49%) shares.

In December 2004, Ross and Pacheco, together as majority shareholders, removed Mitchell as director and officer of the Firm and terminated his employment. Thereafter, Mitchell commenced a dissolution action against the Firm. Mastropietro was not involved in the dispute and did not represent any party in the dissolution action, however, he subsequently represented Mitchell individually in early 2005 by reviewing a contract for Mitchell's new firm. The dissolution action was settled in March 2005, and a settlement agreement ("the Agreement") memorialized the terms of the settlement between the Firm and Mitchell. The Agreement, among other things, set forth standards of conduct related to the promotion, advertising, and attribution for certain architectural projects completed by the Firm prior to the breakup. In or about June 2005, pursuant to the Agreement, the Firm changed its name to Pacheco Ross Associates, P.C ("Pacheco Ross").

---

[1] The Court notes that at this juncture of the litigation, it is not making any findings of fact. Our recitation of the factual backdrop for this Motion is based upon the Affidavits submitted by the parties in support of their respective positions on this Motion. Moreover, because many of the facts pertinent to the instant Motion are not in dispute, there is no need to provide citations for such uncontested averments. However, where facts are in dispute, we cite to the relevant submissions.

In January 2008, Mitchell contacted Mastropietro for legal advice but Mastropietro advised him that he could no longer represent him.  In May 2008, Mastropietro commenced this action on behalf of Pacheco Ross, asserting that Mitchell has run afoul of the terms of the Agreement. Mitchell filed the instant Motion on November 20, 2008, asserting that Mastropietro should be disqualified on the following grounds: (1) improper successive representation; (2) appearance of impropriety; and (3) application of the advocate-witness rule.  Dkt. No. 43-4, Def.'s Mem. of Law.

## II. DISCUSSION

### A.  Disqualification based on Ethical Considerations

1. *Improper Successive Representation*

A motion to disqualify an attorney is within the broad discretion of the court.  *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir.), *judgment vacated on other grounds*, 450 U.S. 903 (1981) (noting that a court's ruling will not be overturned absent an abuse of discretion determination). Since disqualification may impose a serious impact on a party's right to an attorney of his choice, it should only be imposed when continued representation may pose a significant risk of taint upon the trial.  *Glueck v. Jonathan Logan, Inc*., 653 F.2d 746, 748 (2d Cir. 1981).  Generally speaking, motions to disqualify are viewed with disfavor and the party seeking disqualification must meet a high standard of proof before disqualification will be granted.  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (observing that there is "a particularly trenchant reason for requiring a high standard of proof"); *Human Elec., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 105 (N.D.N.Y. 2004); *United States v. Salvagno*, 2003 WL 21939629, at *5 (N.D.N.Y. Mar. 4, 2003).

In deciding a motion to disqualify, courts often seek guidance from the American Bar Association (ABA) and state disciplinary rules, though "such rules merely provide general guidance

and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132-33 (2d Cir. 2005) (*citing Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  In that respect, we note that New York has recently adopted the Model Rules of Professional Conduct, effective April 1, 2009.  The Model Rules, in most respects, do not differ significantly from the previous standards set forth in the Model Code of Professional Responsibility.[2]  Pertinent to this Motion, the standards relating to ethical conflicts stemming from successive representation are substantially similar.  *Compare* Model Rule 1.9(a)-(c) *with* DR 5-108(A)(1).[3]

The Second Circuit has held that in cases of successive representation, an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d at 133 (*citing Evans v. Artek Sys.*

---

[2]  For a comparison of the two standards, see Roy Simon, <u>Comparing the New NY Rules of Professional Conduct To the NY Code of Professional Responsibility</u>, available at www.nysba.org.

[3]  Model Rule 1.9(a) states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.9.

Disciplinary Rule 5-108(A)(1) states that "a lawyer who has represented a client in a matter shall not, without consent of the former client after full disclosure . . . [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former clients."  N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.27 (repealed Jan. 7, 2009).

*Corp.*, 715 F.2d at 791.[4]

Defendants argue that there is a substantial relationship between Mastropietro's prior representation of the Firm and his current representation of Pacheco Ross Architects that is adverse to Mitchell. Defendants' argument in that respect can be summarized as follows: The issue in this action is whether Mitchell has violated the terms of the Agreement. In resolving that issue, one of the key factual questions will be who performed what work on which architectural project. During the time the relevant work was performed, Mastropietro was "privy to confidential communications involving Mitchell Ross's negotiations with its clients and about the performance of work in connection with Mitchell Ross architectural projects. Through confidential communications, Mastropietro knew who was working on what matters," and therefore should be disqualified. Defs.' Mem. of Law at p. 4.

In opposing the Motion to Disqualify, Plaintiffs cite to *Allegaert v. Perot* for the proposition that before the substantial relationship test can be applied, the party moving for disqualification must make a showing that the "attorney [sought to be disqualified] was in a position where he could have received information which his former client might have reasonably assumed the attorney would keep from his present client." 565 F.2d 246, 250 (2d Cir. 1977). In *Allegaert*, a former client moved

---

[4] The substantial relationship test was based initially on the ABA's Cannon 4 of Professional Responsibility, and was later codified as DR 5-108. We note that in other jurisdictions that have adopted the Model Rules, courts have often directly applied the letter of Model Rule 1.9 in deciding motions to disqualify. Under that standard, a party moving to disqualify opposing counsel must establish that (1) an attorney-client relationship existed, (2) the present litigation is substantially related to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant. *See, e.g., United States v. Stiger*, 413 F.3d 1185, 1196 (10th Cir. 2005). The only notable difference between Rule 1.9's standard and the test that has heretofore been applied in this district is that the latter requires a demonstration that the attorney had access to confidential information. However, the Second Circuit has held that once a "substantial relationship is established, the court need not inquire whether the attorney in fact received confidential information, because the receipt of such information will be presumed." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977) (*cited in United States v. Guadalupe*, 400 F. Supp. 2d 536, 539 (W.D.N.Y. 2005)). Thus, as applied, the two tests are nearly identical. The fulcrum under both standards is whether a substantial relationship exists between the prior and subsequent representations, and that is the focus of our discussion.

for disqualification of a firm representing its adversary that had formerly represented both parties during their participation in something akin to a joint venture.  The Second Circuit held that because the attorneys sought to be disqualified "were not positioned to receive information intended to be withheld [from their primary client]," and had "not changed sides from a former client to a current, adverse client," disqualification was not warranted under Canon 4 of the Code of Professional Responsibility.[5]  *Id*. at 251.

Thus, under *Allegaert*, when a former client moves to disqualify an attorney currently representing an adverse client, the substantial relationship test is inapposite if the former client had no reasonable expectation that the confidences disclosed to the attorney during his representation of the former client would not also be shared with the attorney's present adverse client.  565 F.2d at 250.  This rule applies in situations "where a partnership, joint venture or other cooperative effort breaks up, or where two former co-parties to a litigation sue each other."  *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1453 n.7 (S.D.N.Y. 1985).

We note that the *Allegaert* decision involved the application of Canon 4, which does not speak directly to the independent duty of loyalty owed to former clients that is embedded in DR 5-108(A) and Model Rule 1.9.[6]  *Allegaert v. Perot*, 565 F.2d at 251 n.7; *see also In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984) (stating that Model Rule 1.9 encapsulates the duty of loyalty) & *In re I Successor Corp.*, 321 B.R. 640, 649 (S.D.N.Y. 2005) (noting that DR 5-108(A) "was actually promulgated under Canon 5, which defines the duty of

---

[5] Canon 4 provides that a "lawyer should preserve the confidences and secrets of a client."

[6] Canons 5 and 9 address that particular concern.  Canon 5 states that "[a] lawyer should exercise independent professional judgment on behalf of a client;" Canon 9 states that "[a] lawyer should avoid even the appearance of professional impropriety."

loyalty").  Some courts have declined to apply the *Allegaert* rule because that decision was based solely on Canon 4 grounds, finding its scope too narrow to preclude application of the substantial relationship test.  *See, e.g., Touchcom, Inc. v. Bereskin & Parr et al.*, 299 Fed. Appx. 953, 955-56 (Fed Cir. Oct. 6, 2008) & *Prisco v. Westgate Entm't, Inc*., 799 F. Supp. 266, 271-72 (D.Conn. 1992) (noting that the "model Rules and the ABA Code impose different standards").  However, many other courts have applied the rule notwithstanding its Canon 4 foundation.  *See, e.g.*, *Ab v. Kamyr, Inc*., 1991 WL 246465, at *2-3 (N.D.N.Y. Nov. 20, 1991); *Christensen v. United States Dist. Court for Cent. Dist. of Cal*., 844 F.2d 694, 698 (9th Cir. 1988); *Host Marriott Corp. v. Fast Food Operators, Inc.*, 891 F. Supp. 1002, 1007-08 (D.N.J. 1995) (applying *Allegaert* in a disqualification decision based on the Model Rules).

Based upon the arguments and Affidavits presented to us, we find that the rule of *Allegaert* is properly applied in this case.  Defendants argue that the rule announced in *Allegaert* does not apply because "this matter does not involve the joint representation of two unrelated clients" as in *Allegaert*, but rather, two shareholders of a close corporation represented by a common general counsel.  Dkt. No. 48, Defs.' Reply at p. 5.  To the contrary, we believe that the circumstances of Mr. Mastropietro's prior representation of this close corporation is exactly the type of situation for which the rule in *Allegaert* was intended.  Defendants frame their argument almost entirely in Canon 4 terms,[7] focusing on allegedly confidential information about who worked on which project that was passed from Mitchell to Mastropietro during the latter's representation of the Firm.  Assuming that Mastropietro received such information from Mitchell, there is no reason to believe, and Mitchell has offered none, that Mitchell expected Mastropietro to keep such information from Ross,

---

[7] Defendants also make a separate argument based on Canon 9 that Mastropietro should be disqualified due to the appearance of impropriety.  We discuss that claim in Part II.A.2 below.

Mitchell's partner, or anyone else in the Firm for that matter.  Indeed, information regarding who performed work on which project would likely have been known to those involved in the projects, including the parties themselves.

Therefore, we find that Mitchell did not have a reasonable expectation that, during his association with the Firm,[8] the information he relayed to Mastropietro would be withheld from Ross, the other major shareholder.  Therefore, the substantial relationship test is inapposite with respect to any such "confidential" information.

However, even if we were to apply the substantial relationship test, Mitchell's Motion would still fail.  At prong one of the substantial relationship test, there is no dispute that Mr. Mastropietro formerly represented Mitchell in his capacity as general counsel for the Firm, and later as Mitchell's representative on an unrelated contract.  Nor is there any dispute that Mitchell's interests are now adverse to those of Plaintiffs, whom Mastropietro currently represents.  Thus, prong one has been met.

Turning to the second prong of the test, we must decide whether Mastropietro's representation of the Firm in his capacity as general counsel and his subsequent representation of Mitchell after the Firm's breakup are substantially related to the issues in the present lawsuit.  The substantial relationship test is met only upon a showing that the relationship between the prior and current representation is "patently clear," in other words, when the issues for which the initial and subsequent representation was provided are identical.  *Gov't of India v. Cook Indus., Inc*., 569 F.2d 737, 740 (2d Cir. 1978) (internal quotation marks and citation omitted).

---

[8] Mitchell also references confidential communications allegedly made during Mastropietro's brief representation of him after the Firm's breakup.  The *Allegaert* rule is inapplicable to these alleged communications because they were made after Mastropietro's common representation of both parties had ended.

In terms of Mastropietro's role as general counsel, other courts have held that "[w]here an attorney's representation of a client is general in nature, he may be disqualified from representing an adverse party in later litigation, but only if the later litigation puts at issue the client's entire background." *Hickman v. Burlington Bio-Med. Corp.*, 371 F. Supp. 2d 225, 230 (E.D.N.Y. 2005) (*citing United States Football League v. Nat'l Football League*, 605 F. Supp. at 1459).

By their Complaint, the Plaintiffs allege that Mitchell breached the terms of the Agreement, a contract, which sets forth rules of conduct relative to "copyright, publication, advertising and attribution for certain architectural projects." Dkt. No. 1, Compl. at ¶ 8. Essentially, Plaintiffs contend that Mitchell has violated the terms of the Agreement by improperly taking credit for certain architectural designs created during his tenure with the Firm. *Id.* at ¶¶ 9-17. The parties agree that "[t]he issue in the [present] litigation is the enforcement of the Agreement; specifically as to what each party can and can not do in their attribution of certain architectural works." Dkt. No. 47-2, John P. Mastropietro, Esq., Affirm., dated Dec. 10, 2008, at ¶ 12; Dkt. No. 48, Robert Mitchell Reply Aff., dated Dec. 17, 2008, at ¶ 7.

It is undisputed that in order to avoid any conflict of interest, Mastropietro advised the parties that he could not represent either one of them in the dispute that began with Mitchell's termination and culminated in the execution of the Agreement. Mastropietro Affirm. at ¶ 9; Mitchell Reply Aff. at ¶ 6. Thus, Mastropietro was not in any way involved in the settlement negotiations nor the execution of the Agreement.

Although Defendants agree that the present lawsuit is about the parties' rights and obligations under the Agreement, and further agree that Mastropietro did not represent either party in negotiating the Agreement, Defendants nonetheless argue that the present lawsuit is substantially

related to Mastropietro's prior representation of the Firm because Mastropietro was privy to information about who performed work on which project. Defs.' Mem. of Law at p. 4. That argument is without merit. Just because Mastropietro may have knowledge of facts that are relevant to the issues brought before the Court does not mean that the legal representation he provided to the Firm prior to Mitchell's exit concerned legal issues that are identical to those raised in the present litigation. Indeed, a general counsel's "knowledge of the client's general business and financial background is not a proper basis for disqualification." *Hickman v. Burlington Bio-Med. Corp.*, 371 F. Supp. 2d at 230.

Nor is the Court persuaded that the instant lawsuit puts Mitchell's "entire background" at issue. Rather, the issue before the Court appears to be limited to whether the Defendants have violated the terms of the Agreement. That is not an issue for which Mastropietro provided the Firm representation prior to its breakup. Although Mastropietro acknowledges that he represented the Firm in its contracts with third parties, he denies playing any role in the Firm's internal division of labor practices. Mastropietro Affirm. at ¶ 36 (denying that he "had knowledge as to who was doing what on which project").

To the extent that Defendants' Motion is based on the services Mastropietro provided him in early 2005 after he and the Firm parted company, but prior to the execution of the Agreement, wherein Mastropietro "review[ed] contract language for an agreement" between Mitchell and a third party, there is no allegation that such representation is in any way related to the issues presented in the Plaintiffs' Complaint. Mitchell states that

> [d]uring conversations [with Mastropietro] [] regarding that [2005] project, I confidentially shared my thoughts about what was then transpiring at Mitchell Ross. Mastropietro informed me that he did not want to discuss the matter because he represented both me and them; however, during the course of our conversations, he

clearly received confidential communications from me regarding the projects on
which I had performed work and our potential settlement of the dissolution action.
Dkt. No. 42-2, Robert Mitchell Aff., dated Nov. 20, 2008, at ¶ 15.

Mastropietro categorically denies receiving any confidential information from Mitchell.

Mastropietro Affirm. at ¶¶ 14 & 38. In any event, there is no basis to conclude that the services

Mastropietro provided Mitchell in 2005 after the Firm's breakup are substantially related to the

issues presented in the instant Complaint. Therefore, we find that Defendants have not met their

heavy burden of demonstrating that Mastropietro provided representation on legal issues that are

substantially related to those presently before the Court.[9]

Because no substantial relationship exists between Mastropietro's prior and current

representations, we need not discuss whether he had access to, or was likely to have had access to,

relevant privileged information in the course of his prior representation of Mitchell under the third

prong of the substantial relationship test. *See, e.g., In re Enron Corp.*, 2005 WL 3873898, at *12

(Bkrtcy. S.D.N.Y. Aug. 15, 2005). However, we note that information known to both Mitchell and

Ross that was made known to Mastropietro in his capacity as general counsel is not likely to "give

the challenged attorney an unfair advantage" in this case. *United States Football League v. Nat'l

Football League*, 605 F. Supp. at 1464 (discussing what constitutes "privileged information" under

the substantial relationship test). Therefore, Defendants' Motion is **denied** on this ground.

2.  *Appearance of Impropriety*

---

[9] Moreover, Defendants have failed to persuade this Court that Mr. Mastropietro has any relevant and
substantially necessary information about the internal division of labor at the Firm. Anything that Mr. Mastropietro
would have known about which projects were deemed "Mitchell Projects" would be based upon hearsay. Indeed, the
facts as to the disputed division of projects more correctly reside with the erstwhile partners of the Firm and those who
were personally privy to the settlement terms. Essentially, all of this relevant information can be gleaned by others
exclusive of Mr. Mastropietro and from the pertinent records.

Defendants argue that Plaintiffs' counsel should be disqualified on appearance of impropriety grounds as well.  Canon 9 states that "[a] lawyer should avoid even the appearance of professional impropriety."   In cases of successive representation, the degree to which an appearance of impropriety exists under Canon 9 is normally reciprocal to the substantial relatedness of the representations under Canon 5.  *See Board of Ed. of City of New York v. Nyquist*, 590 F.2d at 1246 (stating that disqualification is normally warranted only when a combination of violations under Canons 4 and 9, or Canons 5 and 9 have occurred). Thus, absent a finding of a substantial relationship between former and subsequent representations, "the appearance of impropriety is usually insufficient, in and of itself, to support disqualification." *Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc*., 53 F. Supp. 2d 338, 345-6 (E.D.N.Y. 1999).

Defendants rely on *Rosman v. Shapiro*, 653 F. Supp. 1441 (S.D.N.Y. 1987), in support of their appearance of impropriety argument.  In that case, two 50% shareholders of a close corporation had jointly consulted with a law firm about the terms of a contract their corporation had entered into with another business.  The two shareholders ended up suing each other over, *inter alia*, the terms of the aforementioned contract, during which lawsuit the law firm continued to represent one of the partners against the other.   The court held that disqualification pursuant to Canon 4 was inappropriate, citing the aforementioned rule in *Allegaert*, but held that disqualification was warranted under Canon 9.  653 F. Supp. at 1446.  *Rosman* is easily distinguishable from the present case, and in any event, is not controlling over this Court's discretionary prerogative to decide disqualification motions.  As opposed to the law firm in *Rosman*, Mastropietro did not represent the Firm nor have anything to do with the Agreement that is the basis of the instant lawsuit.  Rather, he intentionally recused himself from that settlement process.  Had the court in *Rosman* sidestepped

the *Allegaert* rule and applied the substantial relationship test, it likely would have found a nexus between the disqualified firm's former and then-current representations because the subject matter of the prior and subsequent representations was the same. As previously discussed, that is not the case here.

Defendants also raise that Mastropietro has made inappropriate comments about Mitchell during the course of this litigation, including characterizing him as "stubborn" while predicting that a settlement would not be easily attained. Dkt. No. 43-3, Sonya del Peral, Esq., Aff., dated Nov. 20, 2008, at ¶ 2. Such comments about Mitchell's personality are irrelevant to the ultimate questions that must be decided in this lawsuit, and have not so tainted these proceedings as to warrant disqualification. *Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp. 917, 925 (N.D.N.Y. 1987) (affirming that disqualification for a violation of Canon 9 is only appropriate in "those rare instances where an attorney's conduct taints the underlying trial" (internal quotation marks and citation omitted)). Therefore, the Motion is **denied** on Canon 9 grounds.

### B. Motion to Strike Mastropietro's Affirmation

Defendants argue that Mastropietro's October 8, 2008 Affidavit, submitted in support of Plaintiffs' Motion for a Temporary Restraining Order, Dkt. No. 28-1, should be stricken from the record because "[i]n the Affirmation, Mastropietro testifies to facts that he could only have gleaned from his prior representation of Mitchell individually and Mitchell Ross, as general counsel, including without limitation, comments such as '[t]he legal entity that contracted for and completed the work in question was the Firm.'" Defs.' Mem. of Law at p. 14. Mastropietro counters that there is nothing stated in that Affirmation that is not "readily apparent" from other submissions on the record. Mastropietro Aff. at ¶¶ 22-30. The Court has reviewed the statements in question and

agrees with Mastropietro that most, if not all, of the statements in his Affirmation can be attributed to other documents currently on the record.[10]   As such, any prejudice emanating from said Affirmation is not visible to the Court's eyes.  Therefore, Defendants' request to have Mastropietro's October 8, 2008 Affidavit stricken from the record is **denied.**

## C.  Disqualification under the Advocate-Witness Rule

Defendants also assert that Mastropietro should be disqualified based on the advocate-witness rule.  The framework for the advocate-witness rule is found in Model Rule 3.7 and Disciplinary Rule 5-102(C).  Model Rule 3.7(a) states:

> A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> > (1) the testimony relates solely to an uncontested issue;
> > (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> > (3) disqualification of the lawyer would work substantial hardship on the client;
> > (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> > (5) the testimony is authorized by the tribunal.

N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.29.

Disciplinary Rule 5-102(c) states:

> [i]f after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer . . . may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer . . . must withdraw acting as an advocate before the tribunal.

N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.21 (repealed Jan. 7, 2009).

As stated earlier, these rules "need not be rigidly applied," rather, they are to be used as

---

[10] In that respect, it is notable that Defendants did not address this aspect of Plaintiffs' Opposition to the present Motion in their Reply papers.

guides in the court's exercise of its discretion. *Lyman v. City of Albany*, 2007 WL 496454, at *3 (N.D.N.Y. Feb. 12, 2007) (internal quotation marks and citations omitted).   A motion for disqualification premised upon the invocation of the advocate-witness rule must be supported by a demonstration that "the testimony is both necessary and substantially likely to be prejudicial." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 281 (S.D.N.Y. 1996) (citations omitted).

In this case, Defendants have made no showing that Mastropietro's testimony is necessary and likely to be prejudicial.  In its frail legal argument on this point, Defendants aver that

> Mitchell communicated and confided in Mastropietro about the interpersonal dynamics at Mitchell Ross.  Mitchell specifically conveyed to Mastropietro his thoughts that Mitchell was doing the lion's share of the design work, while Ross did not carry his weight with respect to design. In light of this, Mastropietro could be called as a witness to testify as to information in his possession about the extent of the work performed by Mitchell on architectural projects, as well as to the roles of Ross and Pacheco played within Mitchell Ross.  Such testimony could, in fact, be critical in determining what kind of credit the parties can claim with respect to any given project such that their promotional material would comply with the applicable standards of fair competition.

Def.'s Mem. of Law at p. 15 (internal citations omitted).

Although Defendants argue that Mastropietro "could" be called as a witness, that does not mean that Mastropietro's testimony is *necessary*.  Even relevant and useful testimony may not be necessary. *Forrest v. Par Pharm., Inc.*, 46 F. Supp. 2d 244, 248 (S.D.N.Y. 1999).  Necessity of testimony depends on "the significance of the matters, weight of testimony, and availability of other evidence." *United States v. Benacquista*, 2008 WL 2371478, at *4 (W.D.N.Y. June 9, 2008) (citations and internal quotation marks omitted).  As previously discussed, the question of who performed what work on which project should be readily answerable by persons who directly participated in the projects.  It is questionable whether Mastropietro's ostensibly hearsay-laden testimony regarding

*-15-*

what Mitchell told him about the projects he was working on would even be admissible in this case, let alone necessary.

In any event, it is clear that this Motion based on the advocate-witness rule is premature at this stage of the litigation. Discovery has yet to be completed, depositions have not been taken, and it is unclear what prejudice would be suffered by either party in the event Mastropietro were to testify at trial. *See Nelson v. Ulster County*, 2007 WL 2288053, at *6 (N.D.N.Y. Aug. 7, 2007) (noting that under DR 5-102, a "lawyer may continue to represent the client until such time the client is prejudiced"). Finally, it should be noted that, even if the discovery process reveals Mastropietro's testimony to be necessary, that would not necessarily preclude his continued representation of Plaintiffs as both Model Rule 1.9(a)(3) and DR 5-102(a) provide an exception for disqualification due to substantial hardship on the client. *Adams v. Vill. of Keesville*, 2008 WL 3413867, at *13 (N.D.N.Y. Aug. 8, 2008) (citations omitted).

As such, Defendants' Motion is **denied** on this ground.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED,** that Defendants' Motion to Disqualify Plaintiffs' Counsel (Dkt. No. 43) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order upon the parties to this action.

Date:   May 29, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-17-*