UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PACHECO ROSS ARCHITECTS, P.C. f/k/a
MITCHELL-ROSS ASSOCIATES ARCHITECTS, P.C.;
and DENNIS A. ROSS, ARCHITECT,
                                  Plaintiffs,

                                                           1:08-CV-0466
v.                                                       (GTS/RFT)

MITCHELL ASSOCIATES ARCHITECTS; and
ROBERT A. MITCHELL,
                                  Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

MASTROPIETRO-FRADE, LLC                    JOHN P. MASTROPIETRO, ESQ.
  Counsel for Plaintiffs and Counter-Defendants
63 Franklin Street
Saratoga Springs, NY 12866

YOUNG SOMMER, LLC                                SONYA K. del PERAL, ESQ.
  Counsel for Defendants and Counter-Claimants
5 Palisades Drive
Albany, NY 12205

HON. GLENN T. SUDDABY, United States District Judge

# DECISION and ORDER

Currently before the Court in this false-advertising action are a motion for a temporary restraining order and preliminary injunction filed by Pacheco Ross Architects, P.C., and Dennis A. Ross, Architect ("Plaintiffs"), and a cross-motion for a temporary restraining order and preliminary injunction filed by Mitchell Associates Architects and Robert A. Mitchell ("Defendants"). (Dkt. Nos. 18, 27.) For the reasons stated below, both motions are granted in part, and denied in part, and the parties are directed to commence the process to arbitrate this matter within thirty (30) days of the date of this Decision and Order.

**I.     BACKGROUND**

On September 26, 2008, Plaintiffs in this action filed a motion for a temporary restraining order and preliminary injunction. (Dkt. No. 18.) On October 3, 2008, Defendants filed a cross-motion for a temporary restraining order and preliminary injunction. (Dkt. No. 27.) On November 3, 2008, the parties appeared before the Court for oral argument on the pending cross-motions and, after a conference with the undersigned, agreed on terms of advertising for an upcoming trade show and moved to stay the Court's decision on the pending cross-motions, so that the parties could arbitrate their dispute. *See* Text Order for 11/03/2008. The Court granted that motion to stay. *Id*.

On November 5, 2008, Defendants filed a motion to disqualify Plaintiffs' counsel due to an asserted conflict of interest. (Dkt. No. 38.) On November 17, 2008, Plaintiffs filed a motion to lift the stay. (Dkt. No. 40.) On November 20, 2008, the Court denied Plaintiffs' motion to lift the stay for three reasons: (1) the urgency of a preliminary injunction had diminished because the next trade show appeared to be months away; (2) the parties had not even yet begun arbitration, which they agreed during oral argument has the potential to resolve the bulk of the dispute in question; and (3) it appeared appropriate for the Decision on pending cross-motions for injunctive relief to be rendered only after a decision on the motion to disqualify Plaintiffs' counsel was rendered. *See* Text Order for 11/20/2008. On May 29, 2008, Magistrate Judge Randolph F. Treece denied Defendants' motion to disqualify Plaintiffs' counsel. (Dkt. No. 50.)

On June 3, 2009, Plaintiffs renewed their motion to lift the stay due to the issuance of Magistrate Judge Treece's decision and the fact that two trade shows were imminent. (Dkt. No. 51.) That same day, Defendants joined in the request. (Dkt. No. 52.) On June 4, 2009, the

Court granted the request to lift the stay and afforded Defendants an opportunity to respond to Plaintiffs' submission of June 3, 2009. *See* Text Order for 06/04/2009. On June 6, 2009, Defendants filed that response. (Dkt. Nos. 54-55.)

Generally, Plaintiffs' motion for a preliminary injunction, and Defendants' cross-motion, have placed in issue the parties' claims regarding sixteen (16) architectural designs, which the Court will describe later. Each motion requests that the Court issue an Order prohibiting the opposing parties from making certain advertising claims, and/or requiring certain attributions, when making any written or graphic representations about any of the sixteen (16) architectural designs in one or more of the following three forums or mediums: (1) at industry trade shows, including a trade show scheduled for June 11-13, 2009, in Verona, New York, and a trade show scheduled for June 26-29, 2009, in Springfield, Massachusetts; (2) in general marketing or public relations materials, and (3) on the internet.

## II.     ANALYSIS OF CROSS-MOTIONS FOR INJUNCTIVE RELIEF

Pursuant to the well-known legal standard governing motions for preliminary injunctions, a party seeking such relief must establish two things. First, the party must establish a likelihood of irreparable harm if the requested relief is denied. Second, the party must establish either (a) a likelihood of success on the merits of its case, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.

      **A.**      **First Requirement–Likelihood of Irreparable Harm**

           **1.**      **Findings of Fact**

Based on the affidavit testimony of Robert Mitchell and Dennis Ross, and exhibits thereto, the Court finds as follows: (1) this is a specialized industry, having to do with the design of fire houses; (2) two very useful ways for a company to attract new clients in this industry is to (a) advertise the fact that the company has received an architectural award, and (b) advertise the fact that the company has performed previous architectural work; (3) both of these types of advertisements are made, for the most part, at trade shows, which are attended by fire chiefs, commissioners and other fire personnel; (4) a large percentage of both sides' new projects come from these trade shows; (5) only a handful of such trade shows occur each year in the United States, approximately eight such shows occurring in 2009; (6) at the trade shows, customers are likely to be confused, or misled, if two different architectural firms claim to have received the same architectural award, or to have performed the same architectural work; (7) once a customer has hired an architectural firm for a project in this industry, the competing firms have effectively lost that customer for that project; (8) while it is difficult to specify the monetary loss resulting from the loss of any particular project, generally, the cost of each project is in the range of hundreds of thousands, if not millions, of dollars; and (9) because the potential loss of customers is of a continuing nature, the movant would have to pursue damages each time it was injured, if equitable relief were not granted.

           **2.**      **Conclusion of Law**

As a result, the Court concludes that both sides have established a likelihood of irreparable harm if the requested relief is denied.

## B.     Second Requirement–Probability of Success on Merits

Section 43(a) of the Lanham Act gives rise to two causes of action: (1) a claim based on the false designation of a product's origin; and (2) a claim based on the false advertising regarding a product.

Taking the second cause of action first, to establish a false-advertising claim under the Lanham Act, the plaintiff must demonstrate that the statement in the challenged advertisement is false in a material way.  Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers.  With regard to the second manner of proving falsity, there are at least three evidentiary routes to prove a likelihood of consumer confusion: (1) survey evidence; (2) evidence of actual confusion; and/or (3) argument based on an inference arising from a judicial comparison of the claims and the context of their use in the marketplace.

Here, the parties have adduced no survey evidence of consumer confusion, or evidence of actual consumer confusion.  Therefore, the likelihood of success of their claims depends on a judicial comparison of the advertising representations and the context of their use in the marketplace.  Such a judicial comparison does not involve a subjective judgment as to whether the judge would personally be confused, but rather, whether the ordinary, prudent customer in the marketplace would likely be confused.  Morever, during such a judicial comparison, a court may consider a number of factors, often called "*Polaroid* factors,"[1] which are well-known and need not be recited in their entirety here.  What is important to note is that the list of *Polaroid* factors can be enlarged or diminished depending on the facts of the particular case.  This is

---

[1]    *See Polaroid Corp v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

because a court's evaluation of the *Polaroid* factors is not a mechanical process.  Rather, a court should focus on the ultimate question of whether consumers are likely to be confused.

### 1. Findings of Fact

Based on the affidavit testimony of Robert Mitchell and Dennis Ross, and exhibits thereto, the Court finds that–while a few of the *Polaroid* factors militate somewhat against the likelihood of confusion–when taken in their totality, the *Polaroid* factors weigh in favor of a finding of consumer confusion with regard to fourteen (14) of the sixteen (16) architectural designs addressed by the parties' motion papers.

Specifically, the Court finds that these fourteen (14) architectural designs are as follows: (1) "Cayuga Heights Fire Station"; (2) "Armonk Fire Station"; (3) "Horsham Battalion # 1"; (4) "Herman Volunteer Fire Co."; (5) "City of Hudson Dept. of Fire"; (6) "Kingston Fire Department"; (7) "Poughkeepsie Public Safety Facility"; (8) "Pearl River Hook & Ladder Co"; (9) "Orangeburg Fire District"; (10) "Stillwater Fire District"; (11) "Horsham Battalion #2"; (12) "Guilderland Fire Station"; (13) "Verdoy Volunteer Fire Department"; and (14) "New City Fire Station."

With regard to the confusion likely to be caused among consumers, the Court finds that, here, that confusion regards who was primarily responsible for designing the architectural work in question, and/or for receiving the architectural award in question.

With regard to the modified *Polaroid* factors, the Court finds that the factors that weigh somewhat against a finding of consumer confusion are (1) the fact that there does not appear to be a significant difference between the quality of the movant's product and the opposing party's product, and (2) the fact that the consumers in the relevant market appear to be relatively sophisticated.

On the other hand, the Court finds that the modified *Polaroid* factors that weigh decidedly in favor of a finding of consumer confusion are as follows: (1) the strength of the moving party's claim to be responsible, or largely responsible, for the architectural design and/or award in question; (2) the close similarity between the opposing party's representations (that it was responsible for the design and/or award in question) and the moving party's representations (that it was responsible for the design and/or award in question); (3) the fact that the architectural services offered by the movant are the same as those offered by the opposing party, and the close proximity of the parties' advertisements for those services in trade shows and trade magazines; (4) the parties' demonstrated intent to continue to compete with each other for credit to the architectural design and/or award in question; (5) the affidavit testimony of both Mitchell and Ross that, in their experience, potential customers are likely to be confused by the parties' competing representations; and (6) the lack of good faith on the part of the opposing party.

### 2. Conclusion of Law

As a result, the Court concludes that Plaintiffs have demonstrated a likelihood of success on the merits of their Lanham Act claims regarding Defendants' representations about the previously described fourteen (14) designs. In addition, the Court concludes that Defendants have demonstrated a likelihood of success on the merits of their Lanham Act claims regarding Plaintiffs' representations about the previously described fourteen (14) designs.

Defendants' motion for a preliminary injunction is denied with regard to the two (2) other designs they addressed in their motion papers–the "River Oaks" design, and the "Kent Island Volunteer Fire Department" design. This is because Defendants have not shown, on the current record, either (a) a likelihood of success on the merits with regard to those designs, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping in their favor.

Because the Court has found a likelihood of success on the parties' false-advertising claims regarding the above fourteen (14) designs, the Court need not, and does not, address the probability of success with regard to the parties' false-designation-of-origin claims regarding those designs. In addition, the Court need not, and does not, address Plaintiffs' probability of success with regard to their breach-of-contract claim.

### III. NATURE OF PRELIMINARY INJUNCTION GRANTED

#### A. Attributions Required

With regard to each of the fourteen (14) architectural designs described earlier, the Court requires certain written attributions by the parties, to be described in a moment.

However, as a general matter, with regard to each attribution, the following four rules apply. First, each attribution must be conspicuous in terms of its placement near the advertising claim regarding the applicable design or award. For example, it is not permissible to express an attribution at the bottom of the page when the advertising claim is expressed in a heading. Second, each of the above-described attributions must be expressed in a conspicuous typeface that is at least the same size as is the typeface used in the claim taking credit for the design or award. Third, no additional language in the attribution is allowed. For example, words such as "design team" or "in charge of design" or "the firm he founded" are not allowed in the attribution. Fourth, no competing attribution is allowed in the materials in which the attribution occurs.

The following chart describes each of the specific attributions required of the parties.

| # | PROJECT | ATTRIBUTION REQUIRED |
|---|---|---|
| 1 | "Cayuga Heights Fire Station" | "Architect of Record: Mitchell-Ross Associates Architects, P.C." OR "Architect of Record: Mitchell-Ross Associates Architects, P.C., now known as Pacheco Ross Architects, P.C." |
| 2 | "Armonk Fire Station" | [same as in Project # 1] |
| 3 | "Horsham Battalion # 1" | [same as in Project # 1] |
| 4 | "Herman Volunteer Fire Co." | [same as in Project # 1] |
| 5 | "City of Hudson Dept. of Fire" | [same as in Project # 1] |
| 6 | "Kingston Fire Department" | [same as in Project # 1] |
| 7 | "Poughkeepsie Public Safety Fac." | "Architects of Record: Mitchell-Ross Associates Architects, P.C., and Pacheco Ross Architects, P.C." |
| 8 | "Pearl River Hook & Ladder Co." | [same as in Project # 7] |
| 9 | "Orangeburg Fire District" | [same as in Project # 7] |
| 10 | "River Oaks" | NONE: DEFENDANTS' CROSS-MOTION DENIED |
| 11 | "Stillwater Fire District" | [same as in Project # 7] |
| 12 | "Kent Island Volunt. Fire Dept" | NONE: DEFENDANTS' CROSS-MOTION DENIED |
| 13 | "Horsham Battalion # 2" | [same as in Project # 7] |
| 14 | "Guilderland Fire Station" | "Architects of Record: Dennis A. Ross, Architect, and Mitchell-Ross Associates Architects, P.C." |
| 15 | "Verdoy Volunteer Fire Dept" | "Architect of Record: Mitchell-Ross Associates Architects, P.C." OR "Architect of Record: Mitchell-Ross Associates Architects, P.C., now known as Pacheco Ross Architects, P.C." |
| 16 | "New City Fire Station" | [same as in Project # 15] |

### B. Bond Required

Plaintiffs shall file a bond with, or give other security to, the Clerk of the Court in the amount of ten thousand dollars ($10,000) no later than 5:00 p.m. on Wednesday, June, 10, 2009, to secure payment of costs for damages sustained by any Defendant who is found to have been wrongfully enjoined or restrained.

Defendants shall file a bond with, or give other security to, the Clerk of the Court in the amount of ten thousand dollars ($10,000) no later than 5:00 p.m. on Wednesday, June 10, 2009, to secure payment of costs for damages sustained by any Plaintiff who is found to have been wrongfully enjoined or restrained.

### C. Scope of Preliminary Injunction

The parties, and/or their employees, must use each of the above-described attributions when making any written or graphic representations about the referenced designs in any written or graphic materials, including–but not limited to–materials used in the following mediums: (1) displays at industry expos or trade shows; (2) internet websites; (3) award entries; (4) magazine submissions; and/or (5) promotional materials.

This injunction begins at 5:00 p.m. on Monday, June 8, 2009.  If, by 5:00 p.m. on Wednesday, June 10, 2009, Plaintiffs have not given the above-described security to the Clerk of the Court, the injunctive relief granted to them shall expire at that time.  Again, the same is true with regard to the security required of Defendants.  Otherwise, the injunctive relief granted shall continue until thirty (30) days from the date of this Decision and Order, unless terminated by Order of the Court before that time.

## IV.     ARBITRATION REQUIREMENT

As indicated above in Part I of this Decision and Order, at a Court conference on November 3, 2008, the parties indicated to the Court their agreement to arbitrate the dispute giving rise to this action and their cross-motions for injunctive relief.  *See* Text Order for 11/03/2008.[2]  Such an effort appeared, and continues to appear, very reasonable to the Court under the circumstances, especially given the fact that an Agreement between the parties, entered into on March 15, 2005, provided that, if Defendant Mitchell disagreed with any projects on the list of "Mitchell Projects" (which were the projects that he had the right to use in marketing materials under the Agreement), then the dispute had to be referred to binding arbitration (such arbitration to be administered by the American Arbitration Association and to be venued in Albany County, New York).  (Dkt. No. 18, Part 6, ¶ 8[a],[b] [Ex. G to Ross Affid.]; Dkt. No. 27, Part 2, ¶ 8[a],[b] [Ex. B to Ross Affid.].)

However, shortly after the Court conference on November 3, 2008, arbitration did not occur because the parties became embroiled in a dispute regarding whether or not Plaintiff's counsel should be disqualified due to an asserted conflict of interest.  (*See* Dkt. No. 51, Part 2, ¶ 10 [Affid. of Plfs.' Counsel, stating, "The arbitration did not occur due solely to the actions of defendants [in filing a motion to disqualify counsel]"].)  On May 29, 2009, Magistrate Judge Treece resolved that dispute in Plaintiffs' favor.  (Dkt. No. 50.)

The Court construes Plaintiffs' most-recent motion papers are consenting to arbitration, and identifying the sole impediment to arbitration as Defendants' unwillingness to participate in

---

[2] (*See also* Dkt. No. 40, Part 1, at 1-2; Dkt. No. 46, at 4, 7, 8, 11; Dkt. No. 51, Part 1; Dkt. No. 51, Part 2, ¶ 10; Dkt. No. 54, Part 1, ¶¶ 3, 4, 6.)

it.[3]  Furthermore, the Court construes Defendants' most-recent papers as expressing a willingness to participate in arbitration, and indeed requesting an Order directing Plaintiffs to submit to arbitration pursuant to the parties' Agreement of March 15, 2005.[4]

As a result, the parties are directed–within thirty (30) days of the date of this Decision and Order–to commence the process to arbitrate this matter pursuant to their Agreement of March 15, 2005.  Plaintiffs shall notify the Court in writing when an arbitrator has been selected, the name of the arbitrator, and the date established for the arbitration.  The arbitration shall be completed within ninety (90) days of the date of this Decision and Order.  Plaintiffs shall notify the Court in writing when the arbitration has been completed.  All other proceedings (except with regard to the injunctive relief granted in this Decision and Order) are stayed until the arbitration is completed.  <u>The arbitrator should not consider this Decision and Order as at all determinative of the legal or factual issue(s) presented in arbitration.  This Court's partial granting of preliminary relief to the parties (which is provisional in nature and results, in part, from the parties' settlement discussions on November 3, 2008) is not binding on any arbitrator</u>. *SG Cowen Sec. Corp. v. Messih*, 00-CV-633434, at *2, n.1 (S.D.N.Y. May 17, 2000), *aff'd*, 224

---

[3]  (Dkt. No. 51, Part 1 ["In connection with the arbitration, it is submitted that defendants' own actions have prohibited same."]; Part 1; Dkt. No. 51, Part 2, ¶ 10 [A mere two days after the November 2, 2008 hearing, after agreeing to continue negotiations and a decision to arbitrate the role of each project, the defendants served an application to Hon. Randolph F. Treece seeking to renew their request to disqualify this firm.  Clearly, the defendants had no interest in settling this matter despite their prior representations to the Court.  The arbitration did not occur due solely to the actions of defendants."].)

[4]  (Dkt. No. 54, Part 1, ¶¶ 3-10, 17-20 [Del Peral Suppl. Affirm., stating that Plfs. did not submit to arbitration only because they believed the attorney disqualification issue should first be resolved, that Plfs. now would like to arbitrate, and that "arbitration must take place prior to a determination by this Court" with regard to Plaintiffs' claims]; Dkt. No. 54, Part 2, at 25 [Ex. D to del Peral Suppl. Affirm., attaching letter to Plfs.' counsel requesting arbitration].)

12

F.3d 79 (2d Cir. 2000).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for temporary restraining order and a preliminary injunction (Dkt. No. 18) is **GRANTED in part** and **DENIED in part**, as described below; and it is further

**ORDERED** that Defendants' cross-motion for a temporary restraining order and preliminary injunction (Dkt. No. 27) is **GRANTED in part** and **DENIED in part**, as described below; and it is further

**ORDERED** that, with regard to the architectural designs identified by the parties as the "Cayuga Heights Fire Station" design, the "Armonk Fire Station" design, the "Horsham Battalion # 1" design, the "Herman Volunteer Fire Co." design, the "City of Hudson Dept. of Fire" design, and the "Kingston Fire Department" design, the parties shall use the following attribution, and only the following attribution: either "Architect of Record: Mitchell-Ross Associates Architects, P.C." or "Architect of Record: Mitchell-Ross Associates Architects, P.C., now known as Pacheco Ross Architects, P.C."; and it is further

**ORDERED** that, with regard to the architectural designs identified by the parties as the "Poughkeepsie Public Safety Facility" design, the "Pearl River Hook & Ladder Company" design, the "Orangeburg Fire District" design, the "Stillwater Fire District" design, and the "Horsham Battalion #2" design, the parties shall use the following attribution, and only the following attribution: "Architects of Record: Mitchell-Ross Associates Architects, P.C., and Pacheco Ross Architects, P.C."; and it is further

**ORDERED** that, with regard to the architectural designs identified by the parties as the

"Guilderland Fire Station" design, the parties shall use the following attribution, and only the following attribution: "Architects of Record: Dennis A. Ross, Architect, and Mitchell-Ross Associates Architects, P.C."; and it is further

**ORDERED** that, with regard to the architectural designs identified by the parties as the "Verdoy Volunteer Fire Department" design, and the "New City Fire Station" design, the parties shall use the following attribution, and only the following attribution: "Architect of Record: Mitchell-Ross Associates Architects, P.C." or "Architect of Record: Mitchell-Ross Associates Architects, P.C., now known as Pacheco Ross Architects, P.C."; and it is further

**ORDERED** that the parties, and/or their employees, must use each of the above-described attributions when making any written or graphic representations about the referenced designs in any written or graphic materials, including–but not limited to–materials used in the following mediums: (1) displays at industry expos or trade shows; (2) internet websites; (3) award entries; (4) magazine submissions; and/or (5) promotional materials; and it is further

**ORDERED** that each of the above-described attributions must be placed conspicuously near the advertising claim regarding the applicable architectural design or award; and it is further

**ORDERED** that each of the above-described attributions must be expressed in a conspicuous typeface that is at least the same size as is the typeface used in the claim taking credit to the design or award; and it is further

**ORDERED** that no additional language shall be used in the attribution; and it is further

**ORDERED** that no competing attribution is allowed in the materials in which each of the above-described attributions occur; and it is further

**ORDERED** that the injunction shall begin at **5:00 P.M.** on **MONDAY, JUNE 8, 2009**;

and it is further

**ORDERED** that Plaintiffs shall file a bond with, or give other security to, the Clerk of the Court in the amount of **TEN THOUSAND DOLLARS ($10,000.00)** no later than **5:00 P.M.** on **WEDNESDAY, JUNE 10, 2009**, to secure payment of costs for damages sustained by any Defendant who is found to have been wrongfully enjoined or restrained by this preliminary injunction; and it is further

**ORDERED** that Defendants shall file a bond with, or give other security to the Clerk of the Court in the amount of **TEN THOUSAND DOLLARS ($10,000.00)** no later than **5:00 P.M.** on **WEDNESDAY, JUNE 10, 2009,** to secure payment of costs for damages sustained by any Plaintiff who is found to have been wrongfully enjoined or restrained by this preliminary injunction; and it is further

**ORDERED** that if, by 5:00 p.m. on Wednesday, June 10, 2009, Plaintiffs have not given the above-described security to the Clerk of the Court, the injunctive relief granted to Plaintiffs shall expire at that time; and it is further

**ORDERED** that if, by 5:00 p.m. on Wednesday, June 10, 2009, Defendants have not given the above-described security to the Clerk of the Court, the injunctive relief granted to Defendants shall expire at that time; and it is further

**ORDERED** that if Plaintiffs have given the above-described security to the Clerk of the Court by 5:00 p.m. on Wednesday, June 10, 2009, the injunctive relief granted to them shall continue until **THIRTY (30) DAYS** from the date of this Decision and Order, unless terminated by Order of the Court before that time; and it is further

**ORDERED** that if Defendants have given the above-described security to the Clerk of

15

the Court by 5:00 p.m. on Wednesday, June 10, 2009, the injunctive relief granted to them shall continue until **THIRTY (30) DAYS** from the date of this Decision and Order, unless terminated by Order of the Court before that time; and it is further

**ORDERED** that the parties shall commence the process to **ARBITRATE** this matter within **THIRTY (30) DAYS** from the date of this Decision and Order; and it is further

**ORDERED** that Plaintiffs shall notify this Court in writing when an arbitrator has been selected, the name of the arbitrator, and the date established for the arbitration; and it is further

**ORDERED** that the arbitration shall be completed within **NINETY (90) DAYS** of the date of this Decision and Order; and it is further

**ORDERED** that Plaintiffs shall notify the Court in writing when the arbitration has been completed; and it is further

**ORDERED** that all other proceedings (except with regard to the injunctive relief granted in this Decision and Order) are **STAYED** until the arbitration is completed.

Dated: June 8, 2009
      Syracuse, New York

_/s/ Glenn T. Suddaby_
Hon. Glenn T. Suddaby
U.S. District Judge